UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYUSH THAKUR,<br>Petitioner,<br>v.<br>JEREMY CASEY; *et al.*,<br>Defendants. | Case No.: 26-cv-3315-BJC-JLB<br>**ORDER:**<br>**(1) DENYING RESPONDENTS' MOTION TO DISMISS (ECF No. 15); and**<br>**(2) GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C.**<br>**(ECF No. 14)** |

Petitioner Ayush Thakur ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2241 directing his immediate release from immigration custody. ECF No. 14. Petitioner contends that, after releasing him into the United States and permitting him to remain at liberty subject to conditions, immigration authorities violated the Fifth Amendment by returning him to custody without notice, an explanation, or an opportunity to contest the revocation of his release. *Id.* Respondents move to dismiss under the abuse-of-the-writ doctrine because Petitioner previously challenged the same detention in the District of New Jersey and obtained an order requiring a bond hearing. ECF No. 15.

## I. BACKGROUND

Petitioner, a 23-year-old native of India, entered the United States on or about October 15, 2024, seeking asylum.[1] ECF No. 14 at 3. Upon entry into the United States, Petitioner was photographed and fingerprinted. *Id.* at 4. Border Patrol released Petitioner from custody approximately a day and a half later. ECF No. 14-1, Declaration of Petitioner Ayush Thakur ("Thakur Decl."), ¶ 2. Petitioner was released and permitted into the country under conditional parole or order of release on recognizance. ECF No. 14 at 3; Thakur Decl. ¶ 2. Petitioner lived in the United States with family and complied with all parole requirements. ECF No. 14 at 3.

Petitioner states that, on October 28, 2025, he appeared for a scheduled Immigration and Customs Enforcement ("ICE") check-in. Thakur Decl. ¶ 4. After waiting for approximately an hour, an agent informed him that he was being detained. *Id.* Petitioner claims he received no explanation and was not afforded an opportunity to contest the detention. *Id.* Petitioner has remained in custody since October 28, 2025. *Id.* ¶ 6.

On November 6, 2025, represented by counsel, Petitioner filed a habeas petition in the District of New Jersey (the "New Jersey Petition"). ECF No. 16 at 2. The New Jersey Petition alleged that ICE detained Petitioner during a scheduled check-in without an individualized assessment of flight risk or dangerousness. ECF No. 16-1. The New Jersey Petition sought immediate release or, alternatively, a bond hearing. ECF No. 16-1 at 2. The Petition asserted procedural due process, substantive due process, and Administrative Procedure Act claims. *Id.* Among other things, it alleged that the government had deprived Petitioner of a protected liberty interest without a hearing and lacked sufficient justification for his detention. *Id.* Its statutory argument principally concerned whether detention was governed by 8 U.S.C. § 1226(a), rather than mandatory detention under § 1225(b). *Id.* at

---

[1] The Court notes that Petitioner's Traverse states that Petitioner entered the United States and was apprehended at the border in 2023. *See* ECF No. 16 at 1. This appears to be a typographical error, as both the First Amended Petition, and supporting declaration, state that Petitioner entered the United States in 2024. *See* ECF Nos. 14 at 4; 14-1 ¶ 2.

5–8. On December 12, 2025, the New Jersey court granted relief requiring a statutorily proper bond hearing under § 1226(a). *Thakur v. Soto*, No. 25-17269 (MAS), 2025 WL 3564642, at *1 (D.N.J. Dec. 12, 2025); *see* ECF Nos. 15 at 1–2; 15-1 at 2.

Petitioner received a bond hearing on December 18, 2025. ECF No. 15-1. The immigration judge denied a change in custody status, finding that Petitioner presented an "extreme flight risk" such that no bond was appropriate. *Id.* The stated reasons included "the lack of a reliable sponsor, limited family ties, manner of entry, and limited residence in the United States." *Id.* at 2. According to Respondents, Petitioner did not appeal that bond decision. ECF No. 15 at 2.

Petitioner's declaration states that his asylum application was denied in January 2026, and that appeal remains pending. Thakur Decl. ¶ 5. The immigration judge's decision, submitted by Respondents, reflects that Petitioner's applications for asylum, withholding of removal, and Convention Against Torture protection were denied as abandoned after deficiencies in the applications and failures to comply with filing requirements. ECF No. 15-2 at 2–8. The immigration judge's decision strongly suggests that the denial of asylum and other relief resulted from serious attorney errors. *See id.* The decision is rather explicit regarding counsel's failures. *See id.* at 2–3 (when asked why deadlines were missed, "Counsel for respondent said it was forgotten" and "[Counsel] candidly told the court he had no reason why the amended application was not filed on time"); *id.* at 3 ("As will be discussed further below both of the I-589 applications are woefully incomplete."); *id.* at 5 ("[Counsel] represented to the court that he did convey the filing deadline with [Co-counsel]. [Co-counsel] told the court that [Counsel] never communicated that date with her. So, the court is really at a loss here but in any event, there is no showing of diligence."). Notably, the immigration judge did not reach the merits of Petitioner's asylum claim. *See generally* ECF No. 15-2.

On July 10, 2026, appointed counsel filed the operative Amended Petition. ECF No. 14. It asserts that Petitioner had a liberty interest following his initial release and that revocation of that release without adequate procedures violates due process. *Id.* The

Amended Petition contends that the appropriate relief is immediate release from custody. *Id.* at 10.

Respondents moved to dismiss on July 17, 2026. ECF No. 15. Respondents argue that the Amended Petition must be dismissed as an abuse of the writ. *Id.* at 2. According to Respondents, the abuse-of-the-writ doctrine bars Petitioner from relitigating the legality of his detention. *Id.* at 3.

In response, Petitioner's Traverse argues that his amended habeas petition does not constitute an abuse of the writ. ECF No. 16. Petitioner argues that his prior counsel provided ineffective assistance by incorrectly treating him as a member of the *Maldonado Bautista* class. *Id.* at 1. As a result, prior counsel sought a bond hearing rather than challenging Petitioner's re-detention following his release on conditional parole. *Id.* Petitioner contends that because he was apprehended at the border in 2024, detained, and subsequently permitted to enter the United States on conditional parole, he could not have been a part of the *Maldonado Bautista* class. *Id.* Thus, Petitioner argues he is entitled to release rather than merely a bond hearing. *Id.*

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

## III. DISCUSSION

### A. Motion to Dismiss

As an initial matter, Respondents move to dismiss the instant habeas petition as successive to the habeas petition filed in the District of New Jersey. ECF No. 15. Respondents cite the bar against successive petitions and argue the instant petition should be dismissed with prejudice because "the claims in this case fall squarely within the scope of those claims that 'were or could have been raised' before the court in New Jersey[.]" *Id.* at 3. Respondents acknowledge that 28 U.S.C. § 2244 is not applicable to the instant Petition. ECF No. 15 at 2, n.3. However, Respondents argue the Petition is barred as successive under the common law abuse-of-the-writ doctrine and *McCleskey v. Zant*, 499 U.S. 467 (1991). The Court disagrees and denies the Motion to Dismiss.

The "abuse of the writ doctrine forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023). Under this doctrine, "a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). There is no statutory prohibition on successive § 2241 habeas corpus petitions. *See Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000) (holding that "§ 2244(a) cannot apply to a § 2241 petition filed by an immigration detainee . . . because § 2244(a) bars successive petitions seeking review of the propriety of a detention '*pursuant to a judgment of a court of the United States*[,]'" and immigration detainees are not detained "pursuant to a judgment of a court of the United States") (emphasis in original and cleaned up). However, the Ninth Circuit has recognized that the common law doctrine of the abuse-of-the-writ *may* apply to successive habeas petitions challenging immigration detention filed pursuant to § 2241. *See Alaimalo*, 645 F.3d at 1049 (9th Cir. 2011). The government bears the burden of pleading abuse of the writ and

must do so with "clarity and particularity." *Id.* "The burden to disprove abuse then becomes petitioner's." *McCleskey*, 499 U.S. at 494.

The Court is not persuaded that *McCleskey* or *Alaimalo* establishes that the instant Amended Petition must be dismissed under the common law abuse-of-the-writ doctrine. *McCleskey* involves a successive habeas petition challenging a state criminal conviction. 499 U.S. at 470–71. Similarly, *Alaimalo* involved a federal prisoner challenging his criminal conviction and sentence. 645 F.3d at 1044–45. Neither *McCleskey* nor *Alaimalo* establish that the doctrine must apply to a § 2241 petition challenging civil immigration detention. Although *Alaimalo* acknowledges that the abuse of writ doctrine *may* apply to a § 2241 petition, the Ninth Circuit did not decide that question. *Id.* Instead, it declined to reach the merits of the government's argument because the government did not meet its burden of pleading abuse of the writ. *Id.* at 1049. Thus, the Court finds that neither decision categorically establishes that the doctrine applies to habeas petitions challenging civil immigration detention. The Government has identified no controlling Supreme Court or Ninth Circuit decision holding otherwise. Accordingly, the Court declines to extend the doctrine to the circumstances presented here.

Even if the Court reached a different conclusion, it finds that the Petition may proceed under the exceptions articulated in *McCleskey*. A successive habeas petition may proceed if the petitioner can show either: (1) cause for the successive petition and that denying it would prejudice the petitioner, or (2) a fundamental miscarriage of justice would result from failure to entertain the claim. 499 U.S. at 494–95.

For cause, Petitioner argues he can show cause through the ineffective assistance of counsel he received related to his prior habeas petition. ECF No. 16 at 4. Petitioner contends that in the prior petition, his attorney failed to raise the appropriate argument—that because Petitioner had been on conditional parole, violations of due process entitled him to immediate release. *Id.* at 4. Instead, prior counsel asserted claims under *Maldonado Bautista*. *See* ECF No. 16-1. Due to this error, Petitioner has suffered prejudice by remaining in custody for more than one year. ECF No. 16 at 5. Petitioner also argues it

would be a clear miscarriage of justice if the Amended Petition is dismissed. *Id.* Petitioner contends that if the Amended Petitioner is dismissed, Petitioner "will remain detained despite clear evidence that he is entitled to release like so many others who have succeeded on the exact same claim." *Id.* at 6. The Court agrees.

The law governing § 2241 habeas petitions challenging immigration detention has evolved rapidly over the past twelve months. Indeed, "[i]n December of 2025, the volume of habeas petitions filed in federal district courts regarding immigration detention had recently rapidly increased." *Islamov v. Larose*, Case No.: 26-cv-4219-LL-MSB, 2026 WL 2644087, at *2 (S.D. Cal. Sept. 8, 2026) (citing *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026) ("The government's change in policy has resulted in detained [noncitizens] filing thousands of habeas petitions in federal courts across the country, seeking bond hearings and possible release from detention.")). "It is no secret that the number of habeas petitions in this District has risen rapidly in the past ten months, and that the law on such petitions was significantly less clear in December of 2025 than it is today." *Ozbalik v. LaRose*, Case No.: 26-cv-4239-JES-SBC, 2026 WL 2455825, at *2 (S.D. Cal. Aug. 21, 2026); *see also Jemna v. Mullin*, No. 3:26-cv-02396-RBM-VET, 2026 WL 2936600, at *3 (S.D. Cal. Sept. 29, 2026) (finding that Petitioner established cause under the abuse of writ exception because the law governing immigration detention habeas petitions was significantly less settled when the petitioner filed his prior petition). Considering this context, the Court finds Petitioner's prior failure to fully argue his entitlement to release rather than a bond hearing excusable. *See Ozbalik v. LaRose*, No. 26-CV-4239-JES-SBC, 2026 WL 2455825, *2 (S.D. Cal. Aug. 21, 2026) (finding cause where the petitioner's counsel failed to raise arguments related to prior parole in his first petition).

The Court further finds "a miscarriage of justice would occur if the Court declined to hear Petitioner's argument on common law procedural grounds." *Ozbalik*, 2026 WL 2455825, at *2. As another court in this District explained:

> In prisoner habeas cases, the miscarriage of justice exception is often tied to claims of actual innocence because "the quintessential miscarriage of justice is the execution of a person who is entirely innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *id.* at 324–25. Immigration detention has no direct equivalent to actual innocence: indeed, it allows the confinement in prison-like conditions of individuals who have been charged with no crime. However, the detention of a man who had been given the right to be within this country shocks the conscience in a similar manner to the criminal conviction of an innocent man. *See Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025) (explaining the due process protections of petitioners with prior parole).

*Id.* The Court agrees with the reasoning in *Ozbalik* and applies it here.

For the reasons articulated in *Ozbalik*, and the Court's determination that the Due Process Clause affords Petitioner pre-deprivation procedures prior to his detention (*see infra*), "the Court finds that it would be a quintessential miscarriage of justice to decline to hear the argument of someone who should not have been re-detained in the first place nearly nine months later on procedural grounds." *Id.*; *see Villatoro v. Mullin*, No. 5:26-CV-04488-MWC-DSR, 2026 WL 2507725, at *6 (C.D. Cal. Aug. 25, 2026) "[T]the detention of a man who is lawfully within this country . . . 'shocks the conscience in a similar manner to the criminal conviction of an innocent man.'"). Accordingly, the Court does not find it appropriate to dismiss the Amended Petition for abuse of the writ. *See Jemna*, 2026 WL 2936600, at *4; *Villatoro*, 2026 WL 2507725, at *6. Respondents' Motion to Dismiss is **DENIED**.

**B. Due Process**

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause of the Fifth Amendment. ECF No. 14 at 4–14.[2] The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right

[2] Having only argued abuse-of-the-writ, Respondents do not address the merits of the Amended Petition.

extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (citation omitted). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents do not contest that Petitioner "passed through [the] gates" on October 15, 2024. ECF No. 14 at 4; *see generally* ECF No. 15. Upon arrival, Petitioner was determined to not be a danger to the community or a flight risk and was released on parole. *Id.* Petitioner integrated himself into the community. *Id.* He lived with family in South Carolina and then moved to New York. *Id.* Petitioner complied with all ICE requirements. *Id.* The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family and continuing the asylum process.[3] *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. ECF No. 14 at 4. DHS initially determined that Petitioner should be paroled because he posed no danger to the community and was not a flight risk. ECF No. 14 at 3. There is no evidence that these findings have changed. *See Saravia v.*

[3] As discussed above, Petitioner is appealing the denial of his asylum application. ECF No. 14 at 4.

*Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no evidence that Petitioner has a criminal record or has otherwise been in criminal trouble. *See* ECF Nos. 14; 15. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.*

Respondents, failing to address Petitioner's Due Process argument, do not point to any change in material circumstances that would warrant reconsideration of Petitioner's parole. *See generally* ECF No. 5. "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 1035, 1047 (E.D. Cal. 2025)).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1037; *Matute*, 807 F. Supp. 3d at 1129, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 15.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-cv-2396-JES-MMP, 2025 WL 2770629, at *4–5 (S.D. Cal. Sept. 26, 2025) (granting a petition for writ of habeas corpus on due process grounds and releasing petitioner from custody subject to the conditions of her preexisting parole); *Velasquez v.*

*Noem*, No. 26-cv-0746-BJC-MMP, 2026 WL 1005077, at *3 (S.D. Cal. Apr. 14, 2026) (same). The Petition is **GRANTED** and immediate release in the appropriate remedy.

## I. CONCLUSION

Based on the foregoing, the Court **DENIES** Respondents' Motion to Dismiss and **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus. ECF No. 14. Accordingly, the Court **ORDERS** as follows:

1. Respondents must immediately release Petitioner from custody, subject to the same terms and conditions on which he was previously released in October 2024.

2. Respondents are **ENJOINED AND RESTRAINED** from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show materially changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. *See Maria S.M. v. Chestnut*, No. 26-CV-03777-TLN-AC, 2026 WL 1480390, at *4.

3. As this concludes the litigation in this case, the Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

Dated: November 25, 2026

Honorable Benjamin J. Cheeks
United States District Judge